SARAH ANN ROWLEY

*v.*

WILLIAM W. BOWYER et al.

[Submitted November 11th, 1908. Decided November 24th, 1908.]

1. The delivery of a deed of conveyance of land by the grantor to a third person to be held by the third person and delivered to the grantee upon the death of grantor will operate as a valid delivery, where there is no reservation on the part of the grantor of any control over the instrument, though the grantee had not empowered the third party to act for him in holding the deed.

2. *Schlicher* v. *Keeler, 67 N. J. Eq. (1 Robb.) 635*, distinguished.

On bill, answer, replication and proofs.

The bill is filed to set aside two certain deeds of conveyance of real estate made January 25th, 1906, by John Bowyer, now deceased, to his son, William W. Bowyer.

A few days before the date of these deeds John Bowyer employed William Casselman, an attorney-at-law, to prepare his will and to draw these deeds. He gave the attorney a list of his several tracts of real estate and directed that his will should dispose of all of them excepting three, and requested the attorney to prepare two deeds conveying the three pieces of real estate not covered by the will, to his son, William W. Bowyer, defendant herein, stating that he owed his son William some money, and that the deeds were to pay him.

The will and deeds were accordingly prepared by the attorney as directed. The will made devises of real estate to all of Bowyer's children, except his son William, grantee in the deeds, and his daughter, Sarah Ann Rowley, complainant herein. All of Bowyer's real estate, except the three properties covered by the deeds, was disposed of by the will, and the will contained no residuary clause. The will was executed January 23d, 1906, and two days later the deeds were executed. After executing the deeds Bowyer handed them to the attorney and said: "Deliver these to my son after my death." The deeds were accordingly retained by the attorney until the death of Bowyer, which occurred some three months later, when the deeds were delivered by the attorney to the grantee named in them and recorded.

Complainant, who receives nothing under the will, now seeks to set aside the deeds on the ground that there was no valid delivery of the instruments.

*Mr. S. Conrad Ott,* for the complainant.

*Messrs. Bleakly & Stockwell,* for the defendants.

LEAMING, V. C.

The delivery of a deed of conveyance of real estate is essential to its validity. Its delivery is a matter of intention, and the acts

and declarations of the grantor are evidence of his intention. It is not delivered unless or until it is the intention of the grantor to perfect the instrument and make it presently effective as a conveyance.

These elementary principles have been recognized in this court in *Crawford* v. *Bertholf, 1 N. J. Eq. (Sax.) 458, 467; Wood-* v. *Woodward, 8 N. J. Eq. (4 Halst.) 779, 784; Martling* . v. *Martling, 47 N. J. Eq. (2 Dick.) 122; Vreeland* v. *Vreeland, 48 N. J. Eq. (3 Dick.) 56, 60;* and in the supreme court in *Folly* v. *Vantuyl, 9 N. J. Law (4 Halst.) 153, 160;* and in the court of errors and appeals in *Ruckman* v. *Ruckman, 33 N. J. Eq. (6 Slew.) 354, 358,* and *Schlicher* v. *Keeler, 67 N. J. Eq. (1 Robb.) 635, 639.* In *Ruckman* v. *Ruckman* it is said: "The essence of delivery consists in the intent of the grantor to perfect the instrument, and to make it at once the absolute property of the grantee, and his acts and declarations are the evidence of such intent." In *Schlicher* v. *Keeler* it is said: "A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance. To constitute a good delivery it must appear from the circumstances of the transaction that it was the grantor's intention to part with the deed, and thereby put the title in the grantee."

Consistently with the principles above defined it must be held that if the grantor handed the deed now in question to the third party with the instructions already stated and with an intention to part with all dominion and control over the deed to the end that it should be presently effective as a conveyance, there was a valid delivery of the deed and a consequent present transmission of title from the grantor to the grantee co-extensive with the grantor's purpose; if, on the other hand, the grantor's intention was that the deed should not permanently pass from his control, the deed would be ineffective as a present conveyance for want of delivery, and it could not be supported in such case as a conveyance to take effect after the death of the grantor, as the transaction would then embody the essential elements of a testamentary devise and be violative of the terms of our statute of wills.

In *Schlicher* v. *Keeler, 61 N. J. Eq. (16 Dick.) 394,* a deed had been handed by the grantor to a third party with instruc-

tions for delivery to the grantee at the death of the grantor, and Vice-Chancellor Reed held that the delivery was sufficient and the deed, in consequence, presently operative as a conveyance. The case was reversed in the court of errors and appeals (*67 N. J. Eq. (1 Robb.) 635*), and it is now earnestly urged in behalf of complainant that the decision of the court of errors and appeals referred to is in conflict with the rule already stated. I am unable to adopt that view. The conclusion reached by the learned vice-chancellor is accurately stated in the headnote of the case as follows: "Where a grantor delivers a deed to a stranger as agent of the grantee, to hold till the grantor's death, with no power of control reserved by the grantor, there is a valid delivery, though the grantee had not empowered the stranger to act for him in holding the deed." While the decree which was entered was reversed, I do not understand the opinion filed by the court of errors and appeals to repudiate, in any way, the legal principles defined by the learned vice-chancellor. By reference to page 639 of the opinion of the court of errors and appeals it will be observed that that court was unable to reach the conclusion of fact that the deed there in question had been delivered by the grantor to the third party as a wholly voluntary act. Assuming the delivery to have been to any extent involuntary, it is manifest that no defined intention upon the part of the grantor to place the deed beyond his control, or that the deed should become presently effective as a conveyance could be properly ascertained. The subsequent statement contained in the opinion to the effect that the deed could not be sustained as a grant, to take effect after the death of the grantor, because violative of the terms of the statute of wills, further discloses the view of the court to have been that the deed then under consideration had not been delivered with an intent upon the part of the grantor that it should be presently operative as a grant.

The precise question here involved has frequently been before the courts of our sister states. The conclusions reached are almost uniformly to the effect that where the delivery of the deed by the grantor to the third person, with instructions for its delivery to the grantee at the grantor's death, has not been accompanied with some acts or words of the grantor indicating a

purpose on his part to reserve to himself the control of the deed, the delivery will be considered sufficient to render the deed operative as a conveyance and to vest a present estate in the grantee co-extensive with the purpose of the grantor.  I say co-extensive with the purpose of the grantor, because in all cases of this class the grantor by the very nature of the transaction reserves to himself until his death the possession of the premises conveyed.  But where the grantor fails to reserve to himself the control of the deed, the delivery of the deed to the third person is held to presently vest the fee in the grantee.  The following cases will be found to support this view:  *Prutsman* v. *Baker, 30 Wis. 644; Bury* v. *Young, 98 Cal. 446; Wittenbrock* v. *Cass, 110 Cal. 1; Ruiz* v. *Dow, 113 Cal. 490; Meech* v. *Wilder, 130 Mich. 29; Shea* v. *Murphy, 164 Ill. 614; Stewart* v. *Stewart, 5 Conn. 317; Belden* v. *Carter, 4 Day 66,* where it is held that title passes presently by delivery to a third person with instructions on the part of the grantor that the third person should keep the deed, and, if not called for by the grantor, deliver it to the grantee after the death of the grantor.  *St. Clair* v. *Marquell (Ind.), 67 N. E. Rep. 693,* where the conveyance was sustained notwithstanding the fact that the grantor subsequently procured possession of the deed.  *Lippold* v. *Lippold, 112 Iowa 134,* where the grantor retained the power to recall the deed during his lifetime, but failed to exercise the power.  *Arnegaard* v. *Arnegaard, 7 N. Dak. 475; Marvin* v. *Stimpson, 23 Colo. 174; Haydon* v. *Easter, 15 Ky. L. Rep. 597; Doe* v. *Beeson, 2 Houst. (Del.) 246; Wright* v. *Worden, 7 Ohio Nisi Prius 122; Hoffmire* v. *Martin, 29 Oreg. 240; Studebaker Brothers* v. *Hunt (Tex.), 38 S. W. Rep. 1134; Griffis* v. *Payne (Tex.), 47 S. W. Rep. 973; Stepens* v. *Huss, 54 Pa. St. 20; Wheelwright* v. *Wheelwright, 2 Mass. 447; Hatch* v. *Hatch, 9 Mass. 307; Foster* v. *Mansfield, 3 Metc. 412; O'Kelly* v. *O'Kelly, 8 Metc. 436; Moore* v. *Hazleton, 9 Allen 102; Church* v. *Gilman, 15 Wend. 656; Hathaway* v. *Payne, 34 N. Y. 92; Ladd* v. *Ladd, 14 Vt. 185; Meech* v. *Wilder, 130 Mich. 29; Linton* v. *Brown's Administrator, 20 Fed. Rep. 455; McCalla* v. *Bane, 45 Fed. Rep. 828.*

The reasons for the conclusions reached in the cases above cited are not entirely uniform; but all of the cases cited hold

that title passes either at or as of the date of the first delivery where no reservation of control of the deed is made by the grantor. In *13 Cyc.* the following text (at *p. 569*), is adopted without qualification:

"The delivery of a deed by the grantor to a third person to be held by him and delivered to the grantee upon the grantor's death will operate as a valid delivery, where there is no reservation on the part of the latter of any control over the instrument. If, however, a power to recall the deed is reserved by the grantor there is no effectual delivery and the deed cannot take effect."

In the several cases above cited the acceptance by the grantee is uniformly regarded as sufficient. In some cases the acceptance is assumed to be complete because of the presumption of acceptance by the grantee of that which is in his favor; in others the final acceptance by the grantee is held to relate to the first delivery.

In harmony with the adjudications already referred to, I think it must be held in this case that the title to the land in controversy is in defendant. The deeds in question were delivered by the grantor to the third party with the instruction that at the death of the grantor they should be delivered by the third party to the grantee. The delivery to the third party was without reservation of control on the part of the grantor over the instruments. No word was said to qualify the specific direction which was given, and nothing occurred to indicate a purpose upon the part of grantor to qualify the direction so given. The direction given was specific, complete and absolute. It is manifest that no purpose to recall the deeds existed in the mind of grantor at the time he delivered them; his purpose at that time was entirely fixed and definite. The suggestion is perhaps incident to all transactions of this nature that the grantor may have believed that he could recall the instrument in the event of a subsequent but unanticipated change of purpose; but such suggestion enters the field of conjecture and cannot be properly entertained in the absence of some evidence of the fact. In *Linton* v. *Brown's Administrators, 20 Fed. Rep. 455, 465,* Mr. Justice Bradley adopts the view that in the absence of some evidence of a contrary intent, full force must be given to the language of the deed and acknowl-

edgment to the effect that the instrument has been signed, sealed and delivered. The retention of possession of the land by the grantor is but consistent with the obvious purpose of a grantor in all transactions of this nature. If a purpose existed to surrender possession of the land at once, no occasion to deposit the deed for the life of the grantor would exist. The intention manifest from the irrevocable delivery to a depositary is to convey the fee but to reserve the possession for life. Accordingly, in *Prutsman* v. *Baker, 30 Wis. 644 (supra),* in referring to facts similar to those now present, it is said: "As to the grantor, the delivery is absolute and final, and so is his conveyance of the land, the title to which passes, at once, to the grantee, qualified only by the right of the grantor to use and occupy, or take and receive the rents and profits during his life, or until the event shall have happened, upon which second delivery is made. The grantor, in such case, converts his estate into a life tenancy, and makes himself the tenant of the grantee. These conclusions result, unavoidably, from the certainty of the event upon which the second delivery is made to depend, and from the impossibility under the circumstances, that the grantor will ever be able to recall or repossess himself of his deed. He delivered his writing, therefore, *as his deed,* always so to remain, and never to return to him, and it becomes presently operative and the title vests immediately in the grantee. * * * As observed in *Cook* v. *Brown, 34 N. H. 460,* the owner of land desiring to make disposition of it at his death, has three courses open to him, either of which he may adopt according to circumstances and as will best suit his convenience and intentions. 'If he desires to convey the same, but not to have his deed take effect until his decease, he can make a reservation of a life estate in the deed; or it may be done by the absolute delivery of the deed to a third person, to be passed to the grantee upon the decease of the grantor; the holder in such case being a trustee for the grantee. But if he wishes to retain the power of changing the disposition of the property at his pleasure, that can only be properly effected by a will.' "

But other circumstances of the present case exist which tend to strengthen the conclusion that it was the intention of the grantor to irrevocably deliver the instruments. The grantee was

the son of the grantor and had during a long period of time advanced various sums of money to his father and has never exacted repayment. No exact account of the moneys so advanced has been kept by the son; but in June, 1892, the father, by a promissory note to his son of that date, recognizes an indebtedness of $2,000. In April, 1894, he executed another note to the son for $100, and in June, 1901, another note for $50. None of these notes had been paid at the date of the execution of the deeds. While these are all the written evidences of loans which the son can at this time produce, he testifies that many other similar advances were made to his father and no account kept of them. I think that the evidence justifies the conclusion of fact that at the time the deeds were executed by the father he was indebted to his son for an amount approximating the value of the property which was conveyed to the son by the deeds now in question. Charles P. Bowyer, a brother of grantor, testifies that some five years ago grantor stated to him that he had received considerable money from his son William at various times, and that he saw no way of securing him but to deed certain properties to him, and that he intended to do so. Later, about a month after the deeds now in question had been executed, the grantor told this witness that he had executed the two deeds to his son William to discharge a debt that he owed him. Charles D. Bowyer, a brother of defendant, testified that grantor stated to him that he was using some of William's (defendant's) money and would have to make him whole in some way. A somewhat similar statement was made by grantor to John R. Bowyer, another brother of defendant. Ida Bowyer, a sister-in-law of defendant, testified that shortly before the date of the deeds in question, grantor told her that he owed defendant money and intended to deed to him the properties which are included in the deeds. Defendant testified that before the date of the deeds his father told him that he did not know that he would ever be able to pay him unless he paid in real estate by deeding to him the properties now in question; and that after the date of the deeds his father told him the deeds were executed and were in the hands of Mr. Casselman, and that witness could have them at any time he wanted them. Mr. Casselman, the depositary, testified that the grantor stated

to him when the deeds were drawn that he owed the grantee some money and that the deeds were to pay him. While some of the testimony of the witnesses referred to are in a measure consistent with the idea that the grantor may have thought that the deeds did not become operative as conveyances until his death, yet the testimony here briefly summarized is substantially corroborative of the conclusion already reached that the grantor treated the delivery of the deeds to the third party as a finality and as operative to discharge his indebtedness to the grantee.

I will advise a decree denying the relief prayed for.